UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

KQUAMINE WINTERS,

                    Plaintiff,

            -v-                          1:23-CV-1355

SCHENECTADY CITY SCHOOL
DISTRICT

                    Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                        OF COUNSEL:

KQUAMINE WINTERS
Plaintiff, Pro Se
36 Swan Street
Schenectady, NY 12307

MAYNARD O'CONNOR SMITH          KELLY ANNE KLINE, ESQ
    & CATALINOTTO
Attorneys for Defendant
6 Tower Place
Albany, NY 12203

THORN GERSHON TYMANN            LIA B. MITCHELL, ESQ
    & BONANNI, LLP
Attorneys for Defendant
5 Wembley Court
Albany, NY 12212

DAVID N. HURD
United States District Judge

## DECISION and ORDER

## I.  INTRODUCTION

On October 31, 2023, *pro se* plaintiff Kquamine Winters ("Winters" or "plaintiff"), formerly employed by defendant Schenectady City School District ("Schenectady" or "defendant") as a cleaner, filed this civil rights action for alleged employment discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the New York State Human Rights Law (the "NYSHRL").  Dkt. No. 1.

On February 1, 2024, Schenectady moved to dismiss Winters's complaint for failure to state any plausible claims for relief.  Dkt. No. 15.  After plaintiff filed his response to defendant's motion, Dkt. No. 25, the Court concluded that this filing was more appropriately construed as an amended pleading, Dkt. No. 30.  Accordingly, the Clerk of the Court was directed to docket the filing as an amended complaint.  Dkt. Nos. 30, 31.

On June 4, 2024, Schenectady renewed its motion to dismiss Winters's amended complaint for failure to state any plausible claims for relief.  Dkt. No. 34.  The motion has been fully briefed and will be considered on the basis of the submissions without oral argument.  Dkt. Nos. 43, 44, 46.

## II.  BACKGROUND

The following facts are taken from Winters's amended complaint, Dkt. No. 31, and will be assumed true for purposes of assessing Schenectady's motion

to dismiss. Notably, however, plaintiff has also filed two separate responses in opposition to defendant's motion. Dkt. Nos. 43, 44. Each document sets out a slightly different version of the factual narrative in plaintiff's amended complaint. *See id*. Upon review of these submissions, and accounting for plaintiff's status as a *pro se* litigant, the Court will also consider the factual recitations offered in these filings as well.

In February of 2019, Winters, an African American man, was hired by Schenectady as a cleaner. Am. Compl. ¶¶ 4, 15. In October 2020, due to the COVID-19 Pandemic, plaintiff was laid off. *Id*. ¶ 4. But he returned to work for Schenectady in January of 2022. *Id*. ¶ 4.

On or around February 2, 2022, Schenectady sent a memorandum to certain employees implementing policy changes to, *inter alia*, the pay scale, "step raises," and the frequency that employees received their pay. Am. Compl. ¶ 6(a); Ex. A to Am. Compl., Dkt. No. 31.

Around the same time, Schenectady also hired a Caucasian woman named Tina Civitello ("Civitello") as a cleaner. Am. Compl. ¶ 6(a). According to plaintiff, Civitello soon began a romantic relationship with plaintiff's direct supervisor. *Id*. Plaintiff contends that despite having less seniority than he did, Civitello was authorized to take personal time during work hours and even went on a thirty-day leave of absence without prior approval. *Id*. By

contrast, when plaintiff engaged in the same "allegedly improper conduct" that Civitello had, defendant sought to terminate his employment. *Id.*

At some point thereafter, Civitello submitted a "bid" for a "higher position" at Schenectady. Am. Compl. ¶ 6(a). Her bid was accepted. *Id.* But plaintiff and fellow employee Qwenton Thompson[1] ("Thompson") were never even notified that this higher position was available or that either man could apply for it. *Id.*

Thereafter, Winters alleges that non-party Thompson received a "contract letter" from Schenectady's human resources ("HR") department reflecting an adjustment "down in steps [of] almost 2,000 dollars." Am. Compl. ¶ 6(c), Ex. A to Am. Compl., Dkt. No. 31. When non-party Thompson emailed HR to ask why he had been "downgraded in steps to an entry level salary," *id.* ¶ 6(c), interim HR chief Deborah Marriot ("Marriot") sent a memorandum to a group of employees, including non-party Thompson, regarding corrections to certain contract letters that were issued by mistake.[2] *Id.*, Ex. B to Am. Compl., Dkt. No. 31.

---

[1] Plaintiff's amended complaint alleges Thompson was also discriminated against on the basis of race or color. *Id.*

[2] This memorandum is dated February 8, 2022. A review of this memo indicates a policy change at Schenectady regarding the underlying basis by which people receive increases in pay, and that a mistaken understanding or miscalculation by defendant's HR department as to this policy change resulted in contract letters being issued either understating or overreporting pay. *Id.*, Ex. B to Am. Compl., Dkt. No. 31. There is no indication that Winters was a recipient of this correspondence. *Id.*

On February 10, 2022, Winters submitted a bid to Schenectady to be awarded cleaning duties "at the E-wing at the high school." Am. Compl. ¶ 6(d). But plaintiff never received a response. *Id.* Notably, plaintiff alleges that defendant's other unnamed employees who did not share plaintiff's race, color, or ethnicity *did* receive responses to their bids. *Id.*

On February 17, 2022, Winters and non-party Thompson submitted written grievances to Schenectady detailing how their compensation had been affected by the policy change. Am. Compl. ¶ 6(e). Evidently, plaintiff and similarly situated employees had union representation. *Id.* ¶ 6(f).

On April 8, 2022, Winters informed his union representatives that he believed was being discriminated against by Schenectady. Am. Compl. ¶ 6(f). Then, on May 20, 2022, plaintiff received a determination of his grievance informing him that he had failed to provide the dates to support his claim that he was denied overtime pay or that this overtime pay was given to a "less senior cleaner" instead.[3] *Id.* ¶ 6(g).

In May of 2022, Winters alleges that an unnamed person asked him to leave a workplace break room where "fellow Caucasian employees" were

---

[3] Plaintiff included a portion of the determination, which he alleges was authored by Marriot, as an exhibit to his complaint. Ex. C. to Am. Compl., Dkt. No. 31. This excerpt indicates Winters submitted two grievances regarding overtime pay. *Id.* It also appears to indicate that Schenectady ruled that Winters was correct regarding his first grievance but failed to substantiate his second one. *Id.* However, it is unclear what ultimate conclusion defendant reached based on the excerpt plaintiff has provided. *Id.*

eating. Am. Compl. ¶ 6(h). On May 24, 2022, plaintiff submitted another grievance after defendant allegedly failed to provide him overtime pay for the preceding six months. *Id*. ¶ 6(i). Plaintiff alleges that he had been lobbying supervisors and HR staff about this missing pay without any response. *Id*. According to plaintiff, unnamed employees who did not share his race, color, and/or ethnicity were properly compensated for overtime hours worked. *Id*.

On June 10, 2022, Winters and non-party Thompson received written determinations from a Schenectady HR staff member concluding that each would be awarded some, but not all, of the requested overtime pay set forth in their grievances. Am. Compl. ¶ 6(k).

Thereafter, Winters submitted another grievance seeking the entirety of the overtime pay that he believed was owed to him. Am. Compl. ¶ 6(l). On July 13, 2022, Schenectady responded indicating they needed additional time to investigate this grievance. *Id*. Plaintiff alleges that rather than doing so, defendant began to investigate both plaintiff and non-party Thompson in retaliation for their continued grievances. *Id*. Plaintiff has yet to receive any determination regarding overtime pay. *Id*. Plaintiff alleges that defendant's ongoing failure to do so constitutes racial and ethnic discrimination. *Id*.

Winters alleges that Schenectady implemented an "overtime sign-up sheet" as a requirement for receiving overtime pay. *Id*. ¶ 6(m). According to

plaintiff, this sign-up sheet violated the collective bargaining agreement ("CBA") in place between defendant and his union.

Starting on June 10, 2022, Winters and non-party Thompson began to periodically meet with interim HR chief Marriot to discuss their grievances. Am. Compl. ¶ 6(n). Over the course of these meetings, Marriot assured plaintiff that defendant wanted to pay him the overtime he was seeking. *Id.*

Thereafter, Winters and non-party Thompson each received a decision responding to a grievance they submitted "granting them an award" but leaving the amount undetermined. *Id.* Then, on July 13, 2022, plaintiff and Thompson received a second decision from Marriot in which the "exact opposite determination" was reached.[4] *Id.* ¶ 6(o).

On July 14, 2022, Winters received a notice from Schenectady informing him that, pursuant to the CBA between the school district and the Union, they intended to terminate his employment on the basis of "neglect of duty and incompetence."[5] Am. Compl. ¶¶ 6(t), Ex. K to Am. Compl., Dkt. No. 31.

---

[4] The Court notes that plaintiff has pleaded separate actions by defendant which each occurred on July 13, 2022. Schenectady informed plaintiff that it needed more time to reach a determination (Am. Compl. ¶ 6(l)) but also informed plaintiff that it rendered an unfavorable conclsuion (Am. Compl. ¶ 6(o)). It is unclear if these pertain to separate grievances.

[5] Winters includes the alleged notice in his amended complaint as Exhibit K. However, this makes no mention of an intent to terminate him, nor does it specify that it was due to incompetence or neglect of duty. Rather, the letter requests he meet with Marriot and defendant's attorney to "discuss issues related to [Winters's] performance as an employee" and "could lead to discipline[.]" Ex. K of Am. Compl., Dkt. No. 31. It is possible based on a review of all exhibits that Winters intended to cite Exhibit J, which seems to assert grounds for termination of plaintiff, but the Court notes that this exhibit is largely illegible. Ex. J to Am. Compl. Dkt. No. 31.

On July 18, 2022, Winters and non-party Thompson met with union president Bryan Schaffer ("Schaffer") and one of the union's labor relations specialists, Angelique Bywater ("Bywater"), to discuss Marriot's unfavorable July 13, 2022 determination.[6]  *Id.* ¶ 6(p).  Plaintiff and Thompson were each advised to file a complaint with the New York State Division of Human Rights ("NYSDHR") because the determination represented "an act of retaliation and racial discrimination." [7]  *Id.*  Later that same day, plaintiff and Thompson submitted yet another grievance because they did not receive their "yearly step raises."  *Id.* ¶ 6(r).  The following day, plaintiff was sent home from work with pay.  *Id.* ¶ 6(s).  Plaintiff was also notified to appear for a hearing on July 22, 2022.[8]  *Id.*

On July 22, 2022, the hearing was conducted.  Am. Compl. ¶ 6(u).  At the hearing, Schenectady indicated their intent to terminate him due to "work performance and attendance[.]"  *Id.*  Winters contends that Bywater served defendant with a complaint alleging that its conduct[9] implicated racial and

---

[6] In his complaint, Winters says this is a July 14, 2022 email.  As no email was cited in the complaint, the Court construes this to mean the July 13, 2022 email from Marriot.  Am. Compl. ¶¶ 6(o)–(p).

[7] It is unclear from the amended complaint whether plaintiff was advised to file a complaint by Schaffer, Bywater, or both.

[8] While Winters's amended complaint gives the impression that he received the notice to appear at the hearing on July 19th, the request to attend the hearing on July 22nd was part of the hand delivered letter Winters received on July 14th, 2022. Ex. K to Am. Compl., Dkt. No. 31.

[9] The scope of the alleged misconduct is unclear from the existing record.

ethnic discrimination and retaliation and that the disciplinary charges levied against plaintiff—for poor work performance and poor attendance—were pretextual. *Id.* This same day, plaintiff informed Schaffer about writing he discovered on his workplace locker stating "Kquamaine Suck'd" along with a sad face emoji. *Id.* ¶ 6(v).

On July 25, 2022, Winters and non-party Thompson called Schenectady to reiterate their belief that defendant was obligated to pay them their unpaid overtime. Am. Compl. ¶ 6(w). Neither man received a response.[10] *Id.* Next, on October 20, 2022, plaintiff and Thompson met with the "Board of Education"[11] to discuss their discrimination and retaliation allegations against Schenectady. *Id.* Here, they were questioned by defendant's attorney regarding their discrimination claims. *Id.* ¶ 6(x).[12][13] On October 17, 2022, Winters filed a complaint with the NYSDHR alleging that Schenectady

---

[10] Plaintiff indicates he expected to receive a determination from an individual named Bethany Centrone. However, they ultimately received the determination from defendant's attorney Douglas Gerhardt instead.

[11] It is unclear to this Court if this entity is affiliated with the defendant or not.

[12] Plaintiff also alleges an individual named Anibal Soler, Jr joined this call and informed plaintiff that the Union "failed to uphold its responsibility in processing their grievance" and that plaintiff's grievances "were merely being swept under the rug." It is unclear from plaintiff's amended complaint who Soler is.

[13] Plaintiff alleges that defendant's attorney wanted to discuss racial discrimination charges that were presented to them both verbally and in writing. Compl. ¶ 6(x). However, plaintiff has not pleaded with any specificity a time in which he submitted grievances related to a protected activity. Insofar as this relates to the complaint Bywater submitted on his behalf, plaintiff has already alleged that this complaint was never submitted to defendant.

engaged in discriminatory and retaliatory employment practices. Am.
Compl. ¶ 7. NYSDHR dismissed plaintiff's complaint but gave "Plaintiff the
right to seek review with the EEOC within 15 days" on June 9, 2023.[14] *Id.* ¶
8. The EEOC dismissed plaintiff's complaint and provided him with notice of
his right to sue in federal court on August 1, 2023. *Id.* ¶ 9.

## III.  LEGAL STANDARD

### A.  Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under
Rule 12(b)(1) when the district court lacks the statutory or constitutional
power to adjudicate it." *Forjone v. Dep't of Motor Vehicles*, 414 F. Supp. 3d
292, 297–98 (N.D.N.Y. 2019) (cleaned up). Rule 12(b)(1) motions may be
either facial or fact-based. *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56
(2d Cir. 2016).

Facial Rule 12(b)(1) motions are "based solely on the allegations of the
complaint . . . and exhibits attached to it[.]" *Id.* To resolve a facial motion,
the district court must "determine whether the pleading alleges facts that
affirmatively and plausibly suggest that the plaintiff has standing to sue."
*Id.* (cleaned up). In doing so, the district court "must accept the complaint's
allegations as true and draw all reasonable inferences in favor of the

---

[14] Plaintiff included only an excerpt of the NYSDHR determination with their amended
complaint. Am. Compl., Ex. M. Nothing in the excerpt that plaintiff includes mentions a right to
seek review with the Equal Employment Opportunity Commission ("EEOC"). *Id.*

plaintiff." *Wagner v. Hyra*, 518 F. Supp. 3d 613, 623 (N.D.N.Y. 2021) (quoting *Nicholas v. Trump*, 433 F. Supp. 3d 581, 586 (S.D.N.Y. 2020)).

By contrast, a defendant who makes a fact-based Rule 12(b)(1) motion submits extrinsic evidence. *Carter*, 822 F.3d at 57. If defendant's extrinsic evidence reveals a dispute of fact whether jurisdiction is proper, plaintiff must proffer evidence to controvert defendant's evidence. *Id*. To resolve a fact-based motion, the district court must then make findings of fact to determine whether plaintiff has standing to sue. *Id*.

## B. **Rule 12(b)(6)**

To survive a Rule 12(b)(6) motion to dismiss, the complaint's factual allegations must be enough to elevate the plaintiff's right to relief above the speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). So while legal conclusions can provide a framework for the complaint, they must be supported with meaningful allegations of fact. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In short, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

To assess this plausibility requirement, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In doing so, the court generally confines itself to the facts alleged in the pleading, any documents attached to the complaint or incorporated into it

by reference, and matters of which judicial notice may be taken. *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (quoting *Concord Assocs., L.P. v. Ent. Props. Tr.*, 817 F.3d 46, 51 n.2 (2d Cir. 2016)).

## IV. **DISCUSSION**

Winters's nine-count amended complaint alleges claims for: (1) race and national origin discrimination in violation of Title VII; (2) hostile work environment in violation of Title VII; (3) retaliation in violation of Title VII; (4) race discrimination in violation of Section 1981 of the Civil Rights Act of 1866 ("Section 1981"); (5) hostile work environment in violation of Section 1981; (6) retaliation in violation of Section 1981; (7) discrimination in violation of the NYSHRL; (8) hostile work environment in violation of the NYSHRL; and (9) retaliation in violation of the NYSHRL.[15]

Schenectady has moved to dismiss Winters's amended complaint in its entirety. Def's Mem., Dkt. No. 34-2. Defendant argues that this Court lacks subject matter jurisdiction over plaintiff's state-law claims because plaintiff failed to properly appeal the NYSDHR's dismissal of his complaint and that,

---

[15]  In Winters's amended complaint, he alleges a single count of "discrimination and harassment" under Title VII, Section 1981, and the NYSHRL (along with a second count of retaliation under each). However, there are two available theories of harassment that plaintiffs may pursue under Title VII: (1) *quid pro quo* harassment and (2) hostile work environment. *See, e.g., Torres v. Pisano*, 116 F.3d 625, 630 (2d Cir. 1997) (citing *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 65 (1986) (holding that two theories for sexual harassment exist under Title VII and that the same is true for racial harassment). As Winters has not made any factual allegations to suggest *quid pro quo* harassment, this Court will construe his harassment claim as one alleging a hostile work environment.

with respect to the remainder of his amended complaint, plaintiff has failed to state any plausible claims for relief.  Def.'s Mem., Dkt. No. 27-1 at 5.

## A. <u>Section 1981</u>

As an initial matter, Winters's Section 1981 claims fail as a matter of law because this federal statute "does not provide a . . .  private right of action against state actors." *Peck v. Cnty. of Onondaga*, 2021 WL 3710546, at *7 (N.D.N.Y. Aug. 20, 2021) (quoting *Duplan v. City of N.Y.*, 888 F.3d 612, 621 (2d Cir. 2018)).  Rather, "the express cause of action for damages created by [42 U.S.C.] § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units . . . ." *Id.* (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733 (1989)).  Courts in this circuit have routinely dismissed Section 1981 claims where, as here, the plaintiff has named a municipality or its employees.  *See, e.g.*, *Duplan*, 888 F.3d at 616, 621 (dismissing § 1981 retaliation claim against the City of New York because § 1983 provides the exclusive remedy).

However, in light of Winters's *pro se* status, his Section 1981 claims will be construed as if he had brought them under § 1983.  Although § 1983 does not ordinarily provide for municipal liability, a plaintiff may bring a claim for discrimination against a municipal entity if he can plausibly allege that an "official policy or custom [ ] caused him to be denied a constitutional right"

pursuant to the United States Supreme Court's Decision in *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978).

Broadly speaking, a plaintiff may bring a *Monell* claim if he can plausibly allege one of the following theories of liability: "(1) a policy formally adopted and endorsed by the municipality; (2) actions taken by policymaking officials that caused the particular deprivation alleged; (3) practices by subordinate officials that are not expressly authorized but are so widespread and consistent that policymakers must have been aware of them; or (4) a failure by policymakers to train or supervise that amounts to deliberate indifference to the rights of those who come into contact with the inadequately trained or supervised municipal employees." *Thomas v. Town of Lloyd*, 711 F. Supp. 3d 122, 138 (N.D.N.Y. 2024) (quoting *Crawley v. City of Syracuse*, 496 F. Supp. 3d 718, 729 (N.D.N.Y. 2020)).

Upon review, even construing Winters's Section 1981 claims as if they were § 1983 claims brought pursuant to *Monell*, these claims must be dismissed.  Plaintiff has not alleged that Schenectady implemented any specific policies or customs that deprived him of a constitutional right.  Nor has he plausibly alleged that defendant's alleged disregard of his various serial grievances was part of any particular custom or practice that violated a

constitutional right.  Therefore, plaintiff has not plausibly alleged *Monell*

liability.  Accordingly, these claims will be dismissed.[16]

### B.  <u>Claims under Title VII and NYSHRL</u>

Next, Winters brings three discrimination claims under Title VII and the

NYSHRL: (1) disparate treatment, (2) harassment, and (3) retaliation.[17]  Dkt.

No. 31, Am. Compl. ¶¶ 16–18.  Schenectady has moved to dismiss each of

these claims for failure to state a claim.  Dkt. No. 34-2 at 5–8.  Defendant

argues that plaintiff has not plausibly alleged that it discriminated against

him on the basis of his ethnicity, race, color, or national origin as required to

state a Title VII or NYSHRL violation.  *Id*.

Title VII and the NYSHRL both make it "an unlawful employment

practice for an employer . . . to discriminate against any individual with

respect to his compensation, terms, conditions, or privileges of employment,

---

[16]  Even if plaintiff were to have satisfied the standard for pleading § 1983 claims against state actors, § 1983 and Title VII claims have different standards with respect to the degree of causation that must be shown.  *See, e.g., Naumovski v. Norris*, 934 F.3d 200, 213 (2d. Cir 2019).  To bring a § 1983 claim, plaintiffs must demonstrate that the harm would not have occurred *but-for* the defendant's conduct, *i.e.*, the defendant's discriminatory animus.  *Id*.  By contrast, Title VII provides a "lessened causation standard" which is that discriminatory animus was merely a "motivating factor."  *Id*.  As plaintiff's claims fail under Title VII *infra*, they must also fail under the heightened § 1983 causation standard.

[17]  Courts generally analyze Title VII and NYSHRL claims together.  However, in 2019, the New York State Legislature amended the NYSHRL.  While the Court is cognizant of the inherent ambiguity in the changes to the NYSHRL, theories available to plaintiffs under Title VII are generally available under the analogous state law.  See Lee v. Riverbay Corp., –F. Supp. 3d–, 2024 WL 4312166, at *11 (S.D.N.Y. Sept. 27, 2024) (noting that the federal civil rights statute serves as a "floor" below which the state law's protections cannot fall).  Accordingly, the Court will proceed to analyze Mr. Graber's retaliation claims together.

- 15 -

because of such individual's race, color, religion, sex, or national origin."
*Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quoting 42 U.S.C. §
2000e–2(a)(1)).

Additionally, Title VII generally forbids racial discrimination in any
employment decision and any discrimination against employees who attempt
to protest or correct discriminatory conditions of employment. *McDonnell
Douglas Corp. v. Green*, 411 U.S. 792, 796 (1973).

### 1. **Disparate Treatment**

*First,* Winters alleges that he was treated differently than similarly
situated employees with respect to, *inter alia*, his grievances surrounding
overtime pay and disparate discipline for breaking defendant's attendance
rules. Am. Compl. ¶¶ 6(a), (i).

The applicable standard for a disparate treatment claim requires a
plaintiff to plausibly allege: (1) "that [he] is a member of a protected class";
(2) that he was qualified for his position or the position he pursued; (3) "that
[he] suffered an adverse employment action"; and (4) that he "can sustain a
minimal burden of showing facts suggesting an inference of discriminatory
motivation[.]" *Littlejohn v. City of N.Y.*, 795 F.3d 297, 311 (2d Cir. 2015).

While plaintiffs are only tasked with this minimal burden at the motion to
dismiss stage, *see id.*, merely reciting the elements of a claim coupled with
conclusory statements is not enough. *Iqbal*, 556 U.S. at 678 (citing *Twombly*,

550 U.S. 544, 555).  Instead, a complaint must provide sufficient factual matter to allow a court to draw a reasonable inference that defendant is liable for the alleged misconduct.  *Id*. (citing *Twombly*, 550 U.S. at 556).

As relevant here, an "[i]nference of discrimination is a flexible [standard] that can be satisfied differently in differing factual scenarios." *Harlow v. Molina Healthcare, Inc.*, 723 F. Supp. 3d 116, 126 (N.D.N.Y. 2024) (cleaned up).  These scenarios "may include the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's [adverse employment action]." *Id*. (cleaned up).

Winters has sufficiently alleged that he is a member of a protected class: he is African American.  Am. Compl. ¶¶ 15, 20, 24.  Plaintiff has also alleged that he was hired by defendant on two separate occasions as a cleaner.  *Id*. ¶ 4.  In other words, it may fairly be inferred that he was qualified for the position.  Plaintiff has also plausibly alleged that he suffered at least one adverse employment action: he was terminated in July of 2022.  *Id*. ¶ 6.

Finally, Winters has also identified facts that support a minimal inference that Schenectady's decision to terminate him was motivated in part by his race, color, religion, sex, and/or national origin with respect to the disparate

treatment he received: he alleges that a similarly situated Caucasian co-worker violated the same attendance rules and was treated more favorably.

Notably, Winters has not offered any other facts to suggest that one or more of defendant's decision-making employees possessed any discriminatory animus.  Although this meager factual showing is generally not enough to survive a motion to dismiss, *see Littlejohn*, 795 F.3d at 311, in light of plaintiff's *pro se* status it is enough to state a disparate treatment claim. Accordingly, defendant's motion to dismiss Winters's discrimination claim will be denied.

## 2.  **Hostile Work Environment**

Next, Winters has brought a claim for hostile work environment under Title VII and the NYSHRL.[18]

To establish a hostile work environment claim under Title VII or the NYSHRL, a plaintiff must plausibly allege that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Littlejohn*, 795 F.3d at 320–21 (quoting *Harris*, 510 U.S. at 21).  This standard has both subjective and objective prongs.  *Id*.  In other words, the plaintiff must *subjectively* find their

---

[18]  As discussed *supra*, Winters asserts a general claim of harassment in violation of Title VII but, given plaintiff's *pro se* status, it is being more properly construed as a hostile work environment claim.

working environment to be abusive *and* a reasonable person in the plaintiff's position must also find the conduct hostile and abusive. *Id.* (citing *Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014)).

There is no "mathematically precise test" for deciding whether an incident or series of incidents is sufficiently severe or pervasive to alter the conditions of a plaintiff's working environment. *Raspardo*, 770 F.3d at 114 (quoting *Harris*, 510 U.S. at 22–23). Instead, courts look to the totality of the circumstances, considering elements including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (quoting *Harris*, 510 U.S. at 23). The effect of identified incidents on the employee's psychological well-being is also relevant—though not determinative. *Id.*

Winters alleges a handful of incidents that typify the type of conduct that would support a hostile work environment claim. Specifically, he alleges being subjected to the following acts at Schenectady: disparate discipline for breaking defendant's attendance rules (Am. Compl. 6(a)), failure to receive equal notice of job opportunities (*Id.*), failure to receive equal consideration of submitted bids (*Id.* ¶ 6(d)), denial of overtime pay (*Id.* ¶ 6(g)), exclusion from a staff breakroom (*Id.* ¶ 6(h)), vandalism of his locker (*Id.* ¶ 6(p)), and failure

to receive determinations from defendant as to grievances he submitted (*Id*. ¶ 6(l)).

It is clear from Winters's amended complaint and other filings that he subjectively found this environment at Schenectady to be hostile and abusive. But plaintiff's allegations fail to satisfy the objective prong. Plaintiff has alleged a handful of seemingly unrelated incidents. It is wholly unclear who the perpetrator was in many of these incidents, and it is therefore difficult to tell whether any of them may properly be imputed to Schenectady.

For example, Winters has alleged no facts to support an inference that the vandalism on his locker may be imputed to defendant. Am. Compl. ¶ 6(v). Similarly, plaintiff's claim that he was asked to leave the breakroom is devoid of any supporting factual detail. *Id*. ¶ 6(h). Given the relatively few distinct incidents alleged, plaintiff has failed to plausibly allege that this conduct was objectively *pervasive*. Further, given the lack of any detail surrounding the events that are alleged, plaintiff has similarly failed to plausibly allege that the conduct was objectively *severe*. Accordingly, this claim will be dismissed.

### 3. **Retaliation**

Finally, Winters alleges that he was retaliated against by Schenectady when he was terminated from his position after filing a series of various union grievances. Am. Compl. ¶¶ 1, 28–31.

At the motion to dismiss stage, a plaintiff raising a Title VII and NYSHRL retaliation claim must plausibly allege: "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Jacobs v. Hudson Valley Family Physicians, PLLC*, 725 F. Supp. 3d 235, 246–47 (N.D.N.Y. (citing *Krul v. DeJoy*, 705 F. Supp. 3d 5, 59 (N.D.N.Y. 2023)).

As relevant here, a plaintiff engages in 'protected activity' when he opposes employment practices prohibited under Title VII, makes a charge of discrimination, or participates in an investigation, proceeding or hearing arising under Title VII. *See* Jacobs, 725 F. Supp. 3d at 247 (citing *Davis v. NYS Dept. of Corr. Attica Corr. Facility*, 110 F. Supp. 3d 458, 462 (W.D.N.Y. 2015)). Importantly, however, protected activities also include informal protests of discriminatory practices such as submitting complaints to management. *Id.* (citing *Arkorful v. N.Y.C. Dept. of Educ.*, 712 F. Supp. 3d 336, 356, (E.D.N.Y. 2024)).

As for the causation requirement, plaintiffs may establish a causal connection based "solely on temporal proximity if the protected activity and alleged retaliation occurred 'very close' in time." *United States v. N.Y.C. Dep't of Educ.*, 407 F. Supp. 3d 365, 408 (S.D.N.Y. 2018) (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001)). The Second Circuit has

found that protected activities followed by adverse employment actions that occur within two months of each other typically support a causal connection. *Jacobs*, 725 F. Supp. 3d at 247 (citing *Housel v. Rochester Inst. of Tech.*, 6 F. Supp. 3d 294, 308 (W.D.N.Y. 2014).

Upon review, Winters has plausibly alleged that Schenectady retaliated against him.  Plaintiff engaged in protected activity: he spoke with defendant at a disciplinary hearing at which time they discussed his previous allegations of discrimination and retaliation.[19]  Compl. 6(x).  Plaintiff has also plausibly alleged that defendant was aware of this activity as he and defendant spoke about the allegations during the disciplinary hearing.  *Id*. Plaintiff has also plausibly alleged a causal link between the protected activity and the adverse action that followed: he was terminated shortly after the disciplinary hearing.  *Id*. ¶ 6.  As discussed, Courts may infer a causal link where the protected activity is followed closely in time by the adverse action.

Therefore, Winters has plausibly alleged Schenectady retaliated against him.  Accordingly, defendant's motion to dismiss Winters's retaliation claim will be denied.

---

[19]  Winters did not specify when or to whom he made these complaints.  However, plaintiff alleges that he spoke with defendant about previous grievances made both in person and in writing.  Compl. ¶ 6(x).  Construing plaintiff's complaint broadly and accounting for his *pro se* status, the court is satisfied that plaintiff participated in protected activity.

## V. **CONCLUSION**

Therefore, it is

ORDERED that

1.  Defendant's motion to dismiss plaintiff's amended complaint (Dkt. No. 34) is GRANTED in part and DENIED in part;

2.  Defendant's letter motion requesting an extension of time to file a reply (Dkt. No. 45) is DENIED as moot;

3.  Plaintiff's amended complaint (Dkt. No. 31) is DISMISSED as to all claims aside from the disparate treatment and retaliation claims under Title VII and NYSHRL; and

4.  Defendant shall file and serve an answer to Plaintiff's remaining claims on or before January 3, 2025.

The Clerk of the Court is directed to terminate the pending motion.

IT IS SO ORDERED.

David N. Hurd
U.S. District Judge

Dated:  December 19, 2024
        Utica, New York.